UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS ZAVALA CISNEROS,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 1:19-cv-01307-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 28)** |

**I.     Introduction**

Plaintiff Nicholas Zavala Cisneros ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 21, 28, 29. After reviewing the record the Court finds that substantial evidence and applicable do not support the ALJ's decision. Accordingly, Plaintiff's appeal is granted.

**II.     Procedural Background**

On July 27, 2015 Plaintiff filed an application for disability insurance benefits and supplemental security income claiming disability beginning April 4, 2015 due to a lower back injury. AR 197–208; 223. The Commissioner denied the application initially on September 25, 2015, and on reconsideration on February 4, 2016. AR 91–94, 97–102.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on November 15, 2017. AR 36–58. Plaintiff was represented by counsel at the hearing.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 10 and 12.

1

AR 36. On March 7, 2018, the ALJ issued a decision denying Plaintiff's application. AR 21–30. The Appeals Council denied review on July 17, 2019. AR 1–8. On September 18, 2019, Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Plaintiff lived in a two-story unit with his 19-year old son. AR 43. He attended no school. AR 43. He worked as a prep cook at a casino for 15 years. AR 43. He lifted containers of poultry and beef weighing 45–50 pounds. AR 46. He injured his lower back in April 2015 lifting a tray of chicken. AR 46. He was on workers' compensation for seven months and returned to work in January 2016. AR 44–45. He was only able to lift minimal weight upon his return, not exceeding 15 pounds. AR 45–46. He used a chair to alternate between sitting and standing while working. AR 50. He was ultimately let go in April 2016. AR 45.

He could clean his home for 20 minutes at a time and go for periodic walks. AR 46. He used a cane since his injury. AR 47. His physical therapy helped very little. AR 47. Injections made his back pain worse. AR 47. His pain medication helped for certain periods of time. AR 47. He used a heated girdle twice a day for pain. AR 48. Vacuuming exacerbated his pain. AR 48. He also experienced right leg numbness down to his foot. AR 48. It was numb 40% of the time. AR 49. Without his cane his leg felt as though it would give out. AR 49. He had fallen previously. AR 49. He could walk short distances without his cane and used it periodically around his house. AR 49. Sitting and standing were equally difficult, and he had to alternate between them every 20–30 minutes. AR 50. He could lift about 8 pounds. AR 51.

#### B. Medical Records

On April 4, 2015, Plaintiff visited the emergency room with sudden onset back pain, hip pain, and leg numbness after lifting a heavy object. AR 305, 308. A lumbar spine CT-scan revealed slight central disc bulges at L5-S1 and L4-L5, and minimal neuroforamina narrowing at L5-S1. He was diagnosed with sciatica and given an injection. AR 306, 311. Three days later FNP Narrod examined Plaintiff, noted pain upon palpation, limited range of motion (ROM), diagnosed displaced intervertebral disc, sciatica, skin sensation disturbance and recommended an MRI. AR

363–64. An April 8, 2015 examination by Dr. Madrigal noted similar findings as well as abnormal motor strength and irregular gait. AR 425. He assessed acute sciatica with bulging discs, prescribed pain medication and recommended physical therapy. AR 423–25. An April 17, 2015 examination by Dr. Madrigal revealed similar findings. AR 421. He prescribed additional pain medication, administered an injection and referred Plaintiff for a spinal surgery evaluation. AR 422. Following May 1 and May 15, 2015 examinations, Dr. Madrigal noted similar findings, continued medication, and reiterated his recommendation for neurosurgery evaluation. AR 411–413, 416.

Plaintiff began physical therapy on April 27, 2015 with DPT Rose who noted symptoms of pain level 9 out of 10, motor deficit at L3 and L4, severe pain with flexion, and that Plaintiff walked with a cane. AR 324–25. DPT Rose diagnosed posterior derangement in the lumbar spine and significant nerve impingement. AR 324–28. At physical therapy on May 7, 2015, he reported no change in pain with treatments. AR 333. Plaintiff attended therapy on May 12, 2015, and experienced increased pain with treatment indicating "significant nerve impingement." AR 329. DPT Rose discontinued therapy due to myotomal weakness. AR 331.

Following a May 22, 2015 orthopedic consultation, Dr. Watson noted Plaintiff's reported symptoms of increased pain with daily activities, reported inability to lift and carry, inability to sit or stand more than 30 minutes, and inhibited sleep and social life. AR 434. Dr. Watson noted decreased lumbar spine ROM, tenderness, and hyposensitivity at L1-S1. AR 436–37. He ordered a spine MRI. AR 438. The MRI revealed loss of T2 weighted signal of the lower 2 lumbar discs with possible small annular tear at L4-L5, and facet arthropathy at L5-S1. AR 432, 453. Dr. Watson found surgery unnecessary and suggested Plaintiff may improve with time and conservative management. AR 432.

Following a June 25, 2015 visit with PA Lemus and Dr. Madrigal, examination was consistent with previous visits, medication was refilled and Plaintiff was referred for pain management. AR 409. Following a July 6, 2015 visit with Dr. Ontiveros, symptoms and findings were consistent with previous records. Plaintiff noted additional side effects of excessive sleep, loss of appetite, described pain as "intolerable," and underwent a Kenalog injection. AR 400. Dr. Ontiveros also imposed work-restrictions. AR 403. Plaintiff reported dizziness during a July 15,

2015 visit with PA-C Larios, who prescribed medication. AR 361. Following an August 3, 2015 visit, Dr. Ontiveros noted similar symptoms and findings and assessed work restrictions: standing, sitting, and walking up to 2 hours per day, and no kneeling/squatting, bending/stooping, pushing/pulling, twisting, climbing, or reaching. AR 392, 395–97.

A September 29, 2015 orthopedic examination with Dr. Nijjar revealed straightening of the lumbar curvature, tenderness in the midline from L3 to S1, paraspinal muscle spasms, reduced spine ROM, and decreased thigh sensation. AR 468. Dr. Nijjar diagnosed sprain/strain of the lumbar spine and degenerative disc disease at L4-L5. AR 468. He concluded Plaintiff suffered an injury while lifting a chicken tray at work and had reached maximum medical improvement. AR 469. He opined Plaintiff could return to his regular work with restrictions and recommended non-surgical treatment to include anti-inflammatory medications and physical therapy. AR 470.

PA-C Lomeli examined Plaintiff on October 26, 2015, assessed dorsalgia and recommended physical therapy. AR 477. A November 23, 2015, MRI revealed mild lumbar spondylosis, mild disc narrowing at L5-S1, and mild disc narrowing at L4-L5. AR 485.

Following a February 9, 2016 examination, Dr. Porter noted Plaintiff's cane use, antalgic gait, lumbar tenderness to palpation, painful ROM, reduced right leg muscle strength and pain with right straight leg raise. AR 479–81. He assessed lumbar radiculopathy, prescribed diclofenac, discussed evaluation with a spine surgeon and referred Plaintiff to physical therapy. AR 479–81. An April 5, 2016 examination revealed similar findings. Dr. Porter referred Plaintiff to a spine surgeon and continued Plaintiff on modified work duty with restrictions. AR 484–86.

March and July 2016 diabetes management examinations with FNP Narrod revealed lumbar stiffness, osteoarthritic changes, tenderness to palpation and painful ROM. AR 521–25. FNP Narrod prescribed metformin and actos for diabetes with hyperglycemia. AR 521–25. Plaintiff treated with NFP Martinez between January and March 2017 and reported symptoms and examination findings were consistent with previous visits. AR 512-517. January 26, 2017 lumbar spine x-rays revealed minimal decrease in the L5-S1 disc space with mild degenerative spurring. AR 539. Plaintiff treated with FNP Martinez on February 21, 2017, to review x-ray results and he was referred for physical therapy. AR 515–16.

On April 25, 2017, Plaintiff presented for physical therapy with impaired ROM, muscle performance, posture, and core strength. AR 544. He attended seven physical therapy sessions through May 22, 2017, his functional task ability improved from severely limited to moderately limited, his walking tolerance improved and he was recommended for five additional sessions. AR 541. June and September 2017 examinations by PA-C Larios still noted low back tenderness and spasm, curvature loss, and reduced ROM. AR 501–02, 509–510.

During a September 15, 2017 consultative examination, Dr. Chukwu noted Plaintiff had relative difficulty rising from a seated position and walking, sat comfortably for a period of time before needing to rise for pain alleviation, used a cane and favored his right leg. AR 488. Dr. Chukwu conducted range of motion testing and diagnosed osteoarthritis of the hips and low back pain with impaired range of motion. AR 488–90.

### C. Medical Opinions

On August 3, 2015, Dr. Ontiveros completed a Physician Work Status Report while Plaintiff was off work on workers' compensation. Dr. Ontiveros opined that Plaintiff could not perform any lifting, he could stand, walk, and sit 2 hours each, and he could not kneel, squat, bend, push, twist, climb stairs, reach, or reach overhead. AR 392. On September 29, 2015, Dr. Nijjar reviewed Plaintiff's medical history and completed an Independent Medical Examination in connection with Plaintiff's workers' compensation proceedings. Dr. Nijjar opined that Plaintiff could return to his regular work provided he lifted no more than 30 pounds with no repetitive turning or twisting. AR 470. On April 15, 2016, Dr. Porter completed a Fitness for Duty Certification form provided by Plaintiff's employer, Eagle Mountain Casino, and released Plaintiff to work with the following restrictions: no standing, no lifting more than 5 pounds, and no sitting for more than 20 minutes at a time. AR 486. On September 15, 2017, consultative examiner Dr. Chukwu evaluated Plaintiff and opined that he could lift and carry 50 pounds occasionally and 20 pounds frequently, frequently perform some postural activities and never perform others, perform manipulative activities without limitation, sit without limitation, stand 4 consecutive hours up to a maximum of 6 hours a day, walk 3 consecutive hours up to a maximum of 6 hours a day, and required a cane for ambulation. AR 490–493.

Non-examining agency physicians Dr. Fast and Dr. Bullard reviewed Plaintiff's records and completed RFC questionnaires on September 14, 2015 and February 4, 2016, respectively. Both physicians opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, sit and stand/walk for 6 hours in an 8-hour workday, frequently balance, kneel, and crawl, frequently climb ramps/stairs, and occasionally climb ladder/ropes/scaffolds. AR 64–65; 75–76.

### D. Vocational Expert

A vocational expert ("VE") testified at the administrative hearing. The ALJ questioned the VE regarding a hypothetical individual of Plaintiff's age, education, and work history who could perform a range of work at the medium exertional level with some postural limitations. AR 52. The VE opined that such an individual could perform Plaintiff's past work as a cook helper. AR 52. The VE further opined that such an individual could also perform other jobs, including: cleaner, laundry worker, and hand packager. AR 52. If the individual was limited to light work, Plaintiff's past work would be precluded, but such an individual could perform other work including: cleaner, packing line worker, and produce sorter. AR 53. If the individual had to alternate between sitting and standing and required a cane for ambulation, no work would be available. AR 54.

### IV. Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V. **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4)

whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## VI.     The ALJ's Decision

At step one, the ALJ found that Plaintiff did engage in substantial gainful activity during the first and second quarters of 2016, but that there had been a period of 12 months or more without substantial gainful activity. The ALJ therefore continued the disability analysis with respect to the periods during which Plaintiff did not engage in substantial gainful activity.  AR 24.  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and diabetes mellitus.  AR 24.  The ALJ found that Plaintiff's hypertension and high cholesterol were non-severe.  AR 24.  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 24.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), with some postural limitations.  AR 24–28.  At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could perform his past relevant work as a cook laborer. AR 28.  Accordingly, the ALJ found that Plaintiff was not disabled.[2]  AR 29.

## VII.     Issues Presented

Plaintiff asserts one claim of error.  Plaintiff contends that the ALJ erred in rejecting the opinions of Dr. Nijjar and Dr. Porter without identifying any specific legitimate reasons.

---

[2] The ALJ addressed step five as an alternative basis to support her decision and concluded that Plaintiff could also perform other jobs existing in significant numbers in the national economy to which Plaintiff could successfully transition given his vocational profile. These jobs included cleaner, laundry worker, and hand packager. AR 29.

### A. **Applicable Law**

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations). An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c)

**B.     Analysis**

    **1.     Dr. Nijjar**

The ALJ discounted Dr. Nijjar's opinion that Plaintiff could lift no more than 30 pounds with no repetitive turning or twisting because that opinion was a "Workers' Compensation evaluation (which) relies on other standards, differing from the Social Security disability standards." AR 27. This reasoning is insufficient. An ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1103 (C.D. Cal. 2002). Rather, the ALJ must evaluate workers' compensation opinions just as he or she would evaluate any other medical opinion and must "translate" workers' compensation terminology into Social Security terminology to accurately assess the implications of those opinions for the Social Security disability determination. *Id.*; *Soria v. Berryhill*, No. 1:18-CV-00089-SKO, 2019 WL 2448435, at *11 (E.D. Cal. June 12, 2019); *Herlinda C. v. Saul*, No. CV 19-2730 AGR, 2020 WL 6287716, at *4 (C.D. Cal. Oct. 27, 2020).

Here, the ALJ recognized that workers' compensation evaluations rely on different standards than Social Security standards. However, she did not explain why that distinction was relevant for the purpose of evaluating Dr. Nijjar's specific assessment that Plaintiff could lift no more than 30 pounds with no repetitive turning or twisting. To the extent that the ALJ was referencing the Social Security Act's 12-month durational requirement when she referred to the distinct standards under Social Security versus workers' compensation, that reasoning is unexplained and potentially inapplicable. For example, Dr. Nijjar's evaluation post-dated Plaintiff's alleged disability onset date by only 6 months, yet it did not specifically state how long the impairment would continue. He did opine, however, that Plaintiff had reached "MMI" (maximum medical improvement) which suggests he expected the impairment to persist

indefinitely.  Thus, it is not clear why the ALJ concluded that Dr. Nijjar's assessment (that Plaintiff could only lift 30 pounds) was inapplicable in the Social Security context.

### 2.     Dr. Porter

Plaintiff also contends the ALJ erred in rejecting Dr. Porter's opinion (AR 479–86) that Plaintiff was limited to lifting no more than 5-10 pounds[3] with no standing and no sitting more than 20 minutes at a time.  Br. at 14.  The ALJ gave this opinion little weight because it was "based on only two examinations and it is overly restrictive considering the conservative treatment and mild objective findings."  AR 27.  Plaintiff contends that it was wrong for the ALJ to reject this opinion because it was only based on two examinations, while crediting the opinions of Dr. Fast and Dr. Bullard (who performed no examinations) and according some weight to the opinion of Dr. Chukwu, who only performed one.  The regulations provide that the length and frequency of the examining relationship is a factor to be considered when assessing medical opinions.  20 C.F.R. § 404.1527(c).  However, the regulations do not provide that it is a dispositive factor, nor do the regulations prohibit an ALJ from discounting one opinion based on the number of examinations while crediting other opinions for unrelated reasons.  20 C.F.R. § 404.1527(c).  The ALJ's reasoning here was proper.

The ALJ also discounted Dr. Porter's opinion as "overly restrictive considering the conservative treatment and only mild objective findings."  AR 27.  Plaintiff contends this was insufficiently specific "boilerplate" language under Ninth Circuit law.  Br. at 14 (citing *Garrison*, 759 F.3d at 1012–13).  Although not a model of specificity or thoroughness, the ALJ's discussion of Dr. Porter's opinion evidence was sufficient as a whole.   In addition to the above quoted explanation, on the previous page of her opinion the ALJ provided a discussion of Dr. Porter's two

---

[3] Dr. Porter's April 5, 2016 examination notes indicate under "plan" that he will continue modified work duty lifting no more than 10 pounds, while the attached April 5, 2016 Fitness for Duty certification limits him to 5 pounds.

11

examinations and his opinion (with citations to the same), although she didn't refer to Dr. Porter by name in that section. *See* AR 26 ("In April 2016, the claimant presented with 4/5 strength on the right hip, quadriceps, and knee, and his provider opined he should continue on modified duty and not lift over 10 pounds. I also give little weight to this opinion limiting the claimant to lifting 10 pounds, as the limited strength in the lower extremity does not support such a limitation in lifting."). Lack of supporting findings from the leg strength examination was a specific and legitimate reason to accord Dr. Porter's opinion little weight. *See* 20 C.F.R. § 404.1527(c)(3) (identifying supportability as a factor affecting weight given to a medical opinion).

Plaintiff contends that Dr. Porter's opinion, while restrictive, was by no means an outlier but was supported by the other examining opinions of record. Br. at 15. This is not an entirely accurate characterization. Although Dr. Ontiveros assessed sitting and standing limitations (maximum of 2 consecutive hours) which were more restrictive than the ALJ's RFC for medium work, Dr. Ontiveros's assessment was decidedly less restrictive than Dr. Porter's assessed restrictions of no standing and 20 minutes of sitting. AR 392, 403, 486. While Dr. Chukwu opined that Plaintiff requires a cane to ambulate (which the ALJ rejected), he nevertheless concluded that Plaintiff could stand and walk 3-4 hours continuously up to a maximum of 6 hours per day, sit without limitation, and lift 50 pounds occasionally and 20 frequently, which supported the ALJ's assessed RFC and starkly contrasted with Dr. Porter's opinion. Finally, although Dr. Nijjar imposed a 30-pound weightlifting restriction, he did not impose any sitting or standing limitations. In that respect his opinion starkly contrasted with Dr. Porter's opinion. AR 470. In sum, none of the other examining opinions of record are fully consistent with Dr. Porter's opinion. The ALJ reasonably concluded that Dr. Porter's opinion was overly restrictive.

### 3.  **Harmless Error**

"T]he court will not reverse an ALJ's decision for harmless error, which exists when it is

clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

Here, the ALJ's error was consequential to the ultimate nondisability determination. The ALJ identified an alternative basis to support her step four conclusion that Plaintiff could perform his past relevant work as a cook (at the medium exertional level). Specifically, in reliance on the VE's testimony, the ALJ found at step five that Plaintiff could perform other work in the national economy. AR 29. The VE identified jobs at the medium and light exertional levels. Dr. Nijjar's opinion that Plaintiff could not lift more than 30 pounds, if adopted, would preclude medium work, but not light work. *See* 20 C.F.R. 404.1567(b)-(c). If limited to light work, however, Grid Rule 202.09 mandates a finding of disability for an individual (such as Plaintiff) who is closely approaching advanced age (50-54), illiterate, and has work experience only in unskilled roles. *See* Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines, Rule 202.09. Accordingly, the ALJ's rejection of Dr. Nijjar's opinion was not harmless.

**VIII.   Conclusion and Remand for Further Proceedings**

The ALJ appropriately discounted Dr. Porter's opinion based on the brevity of treatment relationship and the overly restrictive nature of that opinion in light of conservative treatment and mild objective findings. However, the ALJ improperly discounted Dr. Nijjar's opinion. She discounted his opinion solely because it was rendered in the form of a workers' compensation evaluation which relies on different standards than Social Security, but she did not explain why that distinction was relevant for the purpose of evaluating the specific limitations in his opinion. Remand is therefore appropriate for proper consideration of Dr. Nijjar's opinion. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation.").

### IX. Order

The Court finds that substantial evidence and applicable law do not support the ALJ's conclusion. Accordingly, it is ordered that the Commissioner's decision is reversed and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Clerk of Court is directed to enter judgment in favor of Plaintiff Nicholas Zavala Cisneros, and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **January 22, 2021**                         **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE